**In re Leo MATHIS, d/b/a Plainview Radiator Works and d/b/a Plainview Automotive and Radiator, Debtors.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity, Plaintiff/Appellee,**

v.

**Leo MATHIS, d/b/a Plainview Radiator Works and d/b/a Plainview Automotive and Radiator, Defendant/Appellant.**

**Civ. A. No. CA–5–86–92.**

United States District Court,
N.D. Texas,
Lubbock Division.

Aug. 19, 1986.

Jack Driskill, Brian P. Quinn, David R. Langston, McWhorter Cobb & Johnson, Harold Pigg, Brock, Morton & Pigg, Lubbock, Tex., for plaintiff/appellee FDIC.

William T. Neary, Dallas, Tex., trustee.

Robert B. Wilson, Sims, Kidd, Hubbert & Wilson, Lubbock, Tex., for defendant/appellant debtors.

### MEMORANDUM AND ORDER

WOODWARD, Chief Judge.

This matter came before the court on the appellant debtor's appeal from the United

States Bankruptcy Court for the Northern District of Texas, Lubbock Division. Appellant appeals an order entered on March 3, 1986, by the bankruptcy court.

Because the facts are important, the court will review the history of this case in the bankruptcy court.

## I. *History in Bankruptcy Court*

On October 3, 1985, the appellant debtor Leo Mathis, d/b/a Plainview Radiator Works, d/b/a Plainview Automotive and Radiator, filed a voluntary petition in bankruptcy under Chapter 11 as a debtor-in-possession. At that time, appellant operated a radiator sales and rebuilding facility, and a machine shop; sold automotive parts; and farmed over 1,200 acres in Hale and Swisher Counties. Appellant's primary creditor was City National Bank of Plainview, Texas (hereafter CNB). On the date of bankruptcy, appellant owed CNB the undisputed amount of $1,476,353.93.

The Federal Deposit Insurance Corporation (hereafter FDIC) later closed CNB and became CNB's successor-in-interest.

On October 10, 1985, appellant filed an emergency motion for the use of cash collateral, which was unopposed by the FDIC. On November 1, 1985, an agreed order was entered by the bankruptcy court permitting debtor limited use of the cash collateral in Plainview Radiator Works. The order also provided the FDIC with adequate protection.

On November 8, 1985, the FDIC filed a Motion to Modify Automatic Stay, and a hearing was held on February 6, 1986. At the hearing, the FDIC estimated that the property securing the loan was worth approximately $838,401.74, thus leaving a difference of $637,952.16 between the debt on the date of filing and the value of the collateral. Second, the FDIC claimed that the bank's collateral had diminished in value between $60,000.00 to $100,000.00. Third, the FDIC alleged that no adequate protection had been offered or received by the bank for collateral other than the cash collateral.

The debtor argued that the security liens against the property were defective. Specifically, the debtor claimed that the bank had changed the status of a $1,100,000.00 note signed by the debtor on February 15, 1984, from unsecured to secured. Second, debtor claimed that the bank's lien on the crop proceeds was a preference, or alternatively, a fraudulent transfer. Third, the debtor argued that if the security liens were good against the collateral, the value of the collateral was $1,700,000.00.

On March 3, 1986, the court entered its order and made the following findings of fact:

(1) that CNB holds a validly perfected security interest in certain property of the debtor specifically listed in the order;

(2) that the aggregate value of the collateral securing CNB's indebtedness is between $1,000,000 and $1,100,000;

(3) that based on current bankruptcy law, the debtor is required to provide adequate protection on the loss of investment or loss of the capture of the investment value of the collateral, and that such loss is between 10% and 11% interest per annum;

(4) that adequate protection payments in the amount of $8,333.00 to $9,165.00 per month are required to protect CNB from its reinvestment loss;

(5) that the value of CNB's collateral in the form of the farm machinery and shop equipment had diminished between $2,000 to $2,500 for use and depreciation; and

(6) that the debtor-in-possession owns certain vehicles and 240 acres of real property that are unencumbered at this time.

Based upon these findings, the court ordered debtor to do the following:

(1) to pay CNB $8,333.00 per month as adequate protection for the use of CNB's collateral;

(2) to pay CNB $2,250.00 per month for depreciation of the farm machinery and shop equipment;

(3) to deposit the proceeds received by the debtor, from any collateral whatsoever, in debtor's account at CNB, and that the only authorized expenditures from such account are for salaries, withholding taxes, utilities, and other basic expenses;

. that any other expenses require authorization by a CNB official, or the bankruptcy court;

(4) to pay CNB $20,000.00 as compensation for the deterioration in value of the farm machinery and equipment from the date of filing until the date of the order;

(5) to grant the FDIC a lien on the debtor's unencumbered land and vehicles to cover a short fall in the adequate protection, if such a short fall resulted from debtor's insufficient payments as required above, or any failure of adequate protection that might result; and

(6) to submit a plan of reorganization.

## II. *Issues on Appeal*

The appellant alleges that the bankruptcy court committed nine points of error:

A. Issue No. One: *Did the trial court err in refusing to properly consider evidence on FDIC's status as a secured creditor before ordering adequate protection payments?*

The appellant alleges the following: (1) that the trial court abused its discretion in refusing to hear evidence on the FDIC's status; (2) that the basis of appellant's attack on the FDIC's status is a $1.1 million dollar note executed by appellant on February 15, 1984; and (3) that the note was fraudulently altered from an unsecured to a secured status by CNB, and that the court wrongfully prevented appellant from presenting evidence on this issue.

The appellee alleges the following: (1) that the scope of a hearing on a motion to modify an automatic stay is limited; (2) that the only issues to be resolved at such a hearing are the creditor's status, the debtor's equity in the collateral, the necessity of the property to an effective reorganization, and the adequacy of the protection offered; (3) that a creditor only needs to present a "colorable" claim of secured and perfected status to prevail on a motion to modify an automatic stay; and (4) alternatively, that the appellant admitted that CNB had a secured position when it moved for and obtained use of the cash collateral through the agreed order entered November 1, 1985; and that the appellant would not have moved for such relief if CNB were unsecured.

B. Issue Two: *Can the trial court require debtor to make adequate protection payments without proper determination of FDIC's secured status?*

The appellant alleges the following: (1) that to obtain an automatic stay under 11 U.S.C. § 362(d), a creditor must prove that its interest in the debtor's property is sufficiently clear and in need of protection to justify the exemption of the property from bankruptcy proceedings; (2) that the testimony of the bank official who admitted altering the status of the $1.1 million dollar note raised sufficient doubt as to the validity of the FDIC's secured position; and (3) that because the court failed to properly consider this evidence, its order requiring appellant to make adequate protection payments is unsupported and should be set aside.

The appellee alleges the following: (1) that a creditor is required only to establish his secured position and the lack of equity to modify an automatic stay; (2) that the debtor bears the burden on all other issues including the adequacy of protection, the need to retain the property for reorganization, and the development and proposal of a plan of adequate protection; (3) that if the debtor does not meet this burden, the creditor is entitled to foreclose; and (4) that because it is a court of equity, a bankruptcy court may issue orders necessary to further equity and the purposes of the Bankruptcy Act.

**C. Issue Three:** *Can the trial court take debtor's property by unilaterally and arbitrarily placing a lien thereon without due process of law?*

The appellant alleges the following: (1) that the court unilaterally and arbitrarily placed a lien on his property that was not previously encumbered; (2) that this action violated the due process clause of the Fifth Amendment; and (3) that the bankruptcy court deviated from its role as an impartial judge and became an advocate by imposing a penalty upon debtor instead of deciding whether to modify or lift the stay.

The appellee alleges the following: (1) that the bankruptcy court acted within the Bankruptcy Code; (2) that 11 U.S.C. § 361(2) permits a court to give further protection to a creditor by awarding additional liens; (3) that the courts have rejected similar due process arguments; and (4) that appellant knew as a matter of law that adequate protection could include imposition of a lien on unencumbered property.

**D. Issue Four:** *Can the trial court order debtor to make adequate protection deposits with a bank which is not an authorized federal depository?*

The appellant alleges the following: (1) that the bankruptcy court erred both in judgment and in law by ordering the debtor to place its funds in the now-defunct CNB, and that such action violated 11 U.S.C. § 15345(b); and (2) that the court prevented debtor from presenting evidence of the financial difficulty of CNB and its motivation to convert unsecured loans into secured loans.

The appellee alleges the following: (1) that any claims regarding the bankruptcy court's order directing Mathis to deposit funds in the CNB are now moot; (2) appellee requests this court to take judicial notice that CNB no longer exists, and that CNB was insured by the FDIC; and (3) that because the deposits were insured, 11 U.S.C. § 15345(a) was not violated.

**E. Issue Five:** *Can the trial court give FDIC the powers of a trustee by requiring debtor to seek FDIC's authorization before making purchases or incurring extraordinary expenses?*

The appellant alleges the following: (1) that the court granted appellee the powers of a trustee by requiring debtor to deposit all income received from the operations in CNB, and by requiring bank authorization for purchases and extraordinary expenses; (2) that a debtor-in-possession is entitled to retain control of his business; (3) that if the debtor cannot remain in control, a trustee should assume control, not a creditor of the estate; and (4) that the bankruptcy judge did not have the power to remove the control of the business from the debtor unless there had been allegations of and a real potential for abuse by insiders.

The appellee alleges the following: (1) that the bankruptcy court has the obligation to supervise the debtor's operation and interfere with its management to the extent necessary to protect the creditor's interests under 11 U.S.C. §§ 1107(a) and 1108; and (2) that CNB had a strong interest in supervising the debtor's expenditures because the debtor had not always effectively used its money: that debtor's inventory often stagnated; that debtor often purchased discontinued and non-marketable items; and that inventory proceeds often languished as over-due accounts receivable.

**F. Issue Six:** *Did the trial court properly consider the evidence before it when it placed a value on debtor's property for adequate protection purposes?*

The appellant alleges the following: (1) that adequate protection extends only to a creditor's allowed secured interest; (2) that the court had determined that adequate protection was required prior to debtor's evidence; (3) that the court did not properly determine whether the debtor's property was necessary for reorganization, whether the secured party was entitled to protection, or what that protection should be; (4)

that the court determined the amount of the adequate protection payment without supporting proof; (5) that the court failed to specify the method of valuation it used in fashioning the adequate protection payments; and (6) that the proper valuation for reorganization is the "going concern value."

The appellee alleges the following: (1) that Congress rejected the claim that one standard should govern all property valuations for § 362 purposes; (2) that the equities and circumstances of each case will determine the method of valuation; (3) that the court picked a value in between the appraised values of $838,401.00, liquidation value, to $1,460,000.00, fair market value; (4) that the evidence showed that the business never realized a profit, and that it would continue to operate at a loss; and (5) that it was entitled to recoup its investment loss under *American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984).

> G. and H. Issue Seven: *Did the trial court err in requiring adequate protection payments for periods prior to the motion for adequate protection?*
> Issue Eight: *Did the trial court err in retroactively requiring adequate payments for periods prior to the motion for adequate protection?*

The appellant alleges the following for both issues: (1) that the court's October 28, 1985, order, on the use of the cash collateral, provided adequate protection because appellee received first priority replacement liens, monies, 10% of the total monthly gross income, and insurance on the collateral; (2) that there was no evidence to support the bankruptcy court's order requiring additional adequate protection payments; and (3) that the bankruptcy court acted arbitrarily in requiring debtor to pay these amounts.

The appellee alleges the following: (1) that 11 U.S.C. § 362(d) permits a court to terminate, nullify, or condition an automatic stay, and that this section implicitly authorized the bankruptcy court to grant retroactive relief from a stay; and (2) that the evidence showed there had been severe deterioration in the collateral since the date the debtor filed his petition in bankruptcy.

I. Issue Nine: *Were the remedies ordered by the trial court properly pled or prayed for by creditor?*

The appellant alleges the following: (1) that the relief granted to the appellee was not supported by the pleadings and/or the evidence, except for the monthly adequate protection payments; and (2) that the relief awarded did not and should have conformed to the pleadings and proof.

The appellee alleges the following: (1) that the evidence did support the relief ordered; and (2) that the court was authorized to fashion the relief because appellant failed to meet his initial obligation to formulate a mode of protection.

### III. *Analysis*

#### A. *Standard of Review*

Bankruptcy Rule 8013 provides that a bankruptcy court's findings of fact are not to be set aside unless they are "clearly erroneous." The Fifth Circuit stated in *Matter of Multiponics, Inc.,* 622 F.2d 709, 713 (5th Cir.1980), that "[a]s to all findings of fact, ... a reviewing court of a bankruptcy decision must accept the findings as found, unless they are clearly erroneous." Furthermore, this court may not reweigh the bankruptcy court's ruling unless there has been an abuse of "discretion." *See In re Osborne,* 42 B.R. 988, 994 (Bkrtcy.W.D. Wis.1984).

#### B. *Review of the Bankruptcy Court*

This court has reviewed the record of the proceedings and finds no abuse of discretion in that court's rulings. The court does reverse, however, the monthly adequate protection payments for loss of investment under the authority of *In re Timbers of Inwood Forest Associates, Ltd.,* 793 F.2d 1380 (5th Cir.1986). The appellant's issues of error are addressed in groups.

### 1. *Issues One and Two:*

In this case, the appellee creditor filed a motion to modify the automatic stay. Pursuant to 11 U.S.C. § 362(d), the bankruptcy court may grant relief from the automatic stay to an interested party after notice and hearing, "such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

    (A) the debtor does not have an equity in such property; and

    (B) such property is not necessary to an effective reorganization."

11 U.S.C. § 362 (Supp.1986).

Appellee sought to modify the stay because of inadequate protection. As a court of equity, the bankruptcy court is "required to consider the impact of the stay on the parties and to consider the 'balance of hurt' in fashioning relief." Collier on Bankruptcy § 362.07 (1985). Furthermore, the form of the adequate protection may vary on a case-by-case basis.

The appellant alleges in his first two points of error that the bankruptcy court abused its discretion in failing to admit evidence on the secured status of the FDIC, and in requiring appellant to make adequate protection payments without a proper determination of the FDIC's status. However, in a hearing under 11 U.S.C. § 362(d) or (e), the following allocation of proof applies:

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362 (Supp.1986).

In the Fifth Circuit, only a limited amount of proof is permitted in hearings to modify an automatic stay. In *Matter of Little Creek Development Co.,* 779 F.2d 1068, 1074 (5th Cir.1986), the court affirmed the bankruptcy court's striking of extrinsic state law defenses from the debtor's response to the motion to lift the stay in a § 362(e) hearing. In making its finding, the court relied upon *In re Johnson,* 756 F.2d 738 (9th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985), and *In re Born,* 10 B.R. 43 (Bankrpty S.D.Texas 1981). In both cases, the courts found that in stay litigation, the validity of the claim or contract under the claim is not to be litigated. Furthermore, they found that it is not proper for the debtor to seek affirmative counterrelief during such a hearing.

This court finds that the appellant was not entitled to attack the validity of the underlying note, and that the appellee met its burden of proof. The purpose of a stay hearing is not to litigate the basis of the indebtedness. Instead, there is a presumption in favor of the creditor to give him adequate protection if the value of his collateral decreases. Pursuant to case law in the Fifth Circuit, the bankruptcy court properly refused to hear appellant's argument on the validity of the $1.1 million dollar note. Furthermore, the bankruptcy judge specifically advised appellant that such arguments were not proper in a stay proceeding but should be brought in an adversary proceeding. The bankruptcy judge did not abuse his discretion, nor were these rulings clearly erroneous. Therefore, appellant's issues one and two are overruled.

With respect to the appellant's remaining issues of error on the bankruptcy court's orders of adequate protection payments, this court finds that the bankruptcy court's orders are not clearly erroneous. The appellant has not presented sufficient proof that they are erroneous. Furthermore, there is sufficient evidence in the record to support the bankruptcy court's rulings.

### 2. *Issues Three, Six, Seven, and Eight:*

At the time of the February 6, 1986, stay hearing, the bank was receiving adequate protection payments only for the debtor's use of the cash collateral in Plainview Radiator Works. The FDIC suffi-

ciently proved that it was undersecured, that its collateral had and was decreasing in value. Based upon the evidence of both parties, the bankruptcy court found that the collateral had decreased in value to approximately $1,000,000 to $1,100,000. On the basis of this finding, the FDIC was undersecured in the amount of $376,353.93 to $476,353.93.

Upon review of the record, this court finds that there was sufficient evidence in the record to support the bankruptcy court's order of the following adequate protection: (1) the $2,250.00 monthly payment for depreciation of the farm machinery and shop equipment; (2) the one-time $20,000.00 payment for deterioration in the value of the machinery and equipment; and (3) the lien on unencumbered property. The FDIC is entitled to adequate protection under 11 U.S.C. § 362(d). Furthermore, § 361(2) permits a court to further protect a creditor by awarding additional liens.

Thus, the court finds that these findings were not clearly erroneous. Moreover, this court finds that the bankruptcy court properly considered the evidence prior to placing a value on debtor's property for adequate protection purposes.

▋ The court does reverse the order, however, to the extent that appellant must pay the FDIC $8,333.00 per month for investment loss. Although several circuits and bankruptcy courts in the Fifth Circuit have followed the *American Mariner, supra,* analysis of awarding an undersecured creditor monthly payments for investment loss, the Fifth Circuit holds otherwise. In its recent opinion *In re Timbers of Inwood Forest Associates, Ltd., supra,* the Fifth Circuit held "that Congress did not intend to provide undersecured creditors with periodic post petition interest payments on the value of their collateral as an element of adequate protection." *Id.* at 1382. Based upon this ruling, the court overturns this payment.

### 3. *Issue Four:*

The court does not reach whether the adequate protection payments were placed in a federally-insured institution. Said issue is now moot.

### 4. *Issues Five and Nine:*

With respect to these issues, the court does not find that the bankruptcy court abused its discretion or that the rulings were clearly erroneous. As stated above, the bankruptcy court is a court of equity and must consider the "balance of hurt" in determining relief. The bankruptcy court's decisions are supported by the evidence.

Accordingly, the rulings of the Bankruptcy Court concerning the appellee's motion, dated November 8, 1985, to modify the automatic stay are affirmed except the $8,333.00 monthly payment for the appellee's investment loss is overturned. Furthermore, this action is remanded to the bankruptcy court for entry of an appropriate order.