P.J. Murphey HARMON, Appellant

v.

1401 ELM STREET CONDOMINIUM ASSOCIATION—Insignia/Esc of Texas, Inc., as Agent, Appellee.

No. 05–03–01025–CV.

Court of Appeals of Texas, Dallas.

June 2, 2004.

Rehearing Overruled Aug. 4, 2004.

P.J. Murphey Harmon, Houston, pro se.

Scott Allen Shanes, Amy L. Saberian, P. Michael Jung, Strasburger & Price, L.L.P., Dallas, for Appellee.

Before Justices MORRIS,
WHITTINGTON, and JAMES.

## OPINION

Opinion by Justice JAMES.

In this breach of contract and declaratory judgment action brought by 1401 Elm Street Condominium Association (the Association), P.J. Murphy Harmon appeals the summary judgment granted in favor of the Association. In three issues, Harmon argues the court erred in (1) granting the Association's motion for summary judgment because the lease did not permit the Association's appraisement procedure; (2) denying Harmon's summary judgment motion because the lease did not permit the Association's appraisement procedure; and (3) entering judgment for the total amount of damages against Harmon because the Association settled with other defendants. We affirm the trial court's judgment.

### BACKGROUND

The Association is the lessee in a ninety-nine year lease covering real property in Dallas, Texas. Harmon is one of several successor lessors. The lease, which commenced on January 1, 1961, provided for a fixed rental amount to apply to ten-year periods, with a pre-determined amount to apply to the first twenty years—$833.33 per month for the first ten years and $1000.00 per month for the next ten years. Paragraph four of the lease addresses computation of rent after the first twenty years, providing for monthly rent to be "one-half of one percent (½ of 1%) of the value of the leased premises, as determined by the most recent previous appraisal, as hereinafter provided, except that no such monthly rental payment shall ever be less than that, as aforesaid, for the second ten (10) years' period." Section (d) of paragraph four addresses subsequent appraisals.

From 1991 through 2000, the rental amount was $1875 per month. In 2000, the Association sought to have the property appraised, and the property's value was found to be $140,000. Under Paragraph Four, the new rent would be $1000 because one-half of one percent of the appraised value fell below the $1000 per month floor. The Association received the appraisal in May 2000, and on June 6, 2000, it notified the lessors they had received a copy of the appraisal and recommended that the lessors appoint an appraiser as per the lease. One of the lessors, Harmon, disputed his obligation to retain an appraiser. In December 2000, the Association requested a change in the rental amount based on its 2000 appraisal. The lessors, however, contended the appraisal was invalid and that if the full rental amount was not paid, it would be a breach of the lease.

The Association continued to pay monthly rent in an amount of $1875, but it sought a declaratory judgment in April 2001. The Association asked the court to declare that the Association had a valid appraisal done; the lessors were obligated to appoint an appraiser or accept one from the court; the monthly rent should be based on the reappraisal; and the Association's payment of rent based on the reappraisal would not constitute breach of the lease. The Association also contended the lessors had breached the lease contract, and it sought damages, attorney's fees, and costs.

The Association moved for appointment of an appraiser in November 2001. The lessors contended that because no appraisal had been completed in the first three months of 2000, the rental amount should remain $1875 per month. The trial court, however, granted the Association's motion and appointed an appraiser on February

18, 2002, ordering the lessors to retain the appointed appraiser. The lessors, however, did not do so. In August 2002, the Association amended its petition, asking the court to also declare that since January 1, 2001, the rental amount did not exceed $1000 per month and that the lessors failed to comply with their obligation to appoint an appraiser. The Association filed a motion to compel lessors to retain the appointed appraiser, which was granted on October 3, 2002. The appraisal was completed, and the property was valued at $187,500. The monthly rental calculated under this value is $1000 because one-half of one percent is less than the $1000 floor. After receiving the October 2002 appraisal, in November 2002, the Association moved for summary judgment, stating there were no contested fact issues and it was entitled to judgment as a matter of law.

The lessors filed a response and a summary judgment motion, arguing it was undisputed that the Association had not had a valid reappraisal performed and had breached the lease by failing to fulfill requirements to have an appraisal performed. The lessors argued the Association had not complied with its obligations under the lease. They alleged the Association was required to meet, attempt to agree prior to any reappraisal, appoint a representative, and notify the lessors "promptly."

In March 2003, the trial court granted the Association's motion. The court found the appropriate amount of rent as of January 1, 2001 was $1000 per month. The court further found that the lessors had received $23,625 in rent overpayments and ordered the lessors to pay the Association damages in that amount as well as prejudgment interest. The court denied the lessors' motion for summary judgment and set a date for trial for determination of the issue of attorney's fees. In May, the Association nonsuited—with prejudice—all of the lessors other than Harmon; they had reached a settlement. The Association also nonsuited its attorney's fees claim against Harmon without prejudice. This was its only remaining claim. The Association moved for final judgment, based on the summary judgment, and the final judgment was entered in June 2003. After judgment was entered, Harmon responded to the Association's motion for final judgment, requesting a credit for the sums the Association would be receiving from the settling lessors, and Harmon filed a notice of appeal.

## THE APPRAISAL PROCEDURE / SUMMARY JUDGMENT

In his first and second issues, Harmon complains the court erred in granting the Association's summary judgment motion and denying his summary judgment motion because the appraisal procedure used by the Association was not permitted by the lease. Harmon alleges that under the lease contract, the Association was required to meet and to attempt to agree before the end of March 2000 in order to have the right to have the property reappraised.

### *Standard of Review*

Because the parties do not dispute the relevant facts, this is a proper case for summary judgment. *See Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 563 (1962). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *See City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000); *Guynes v. Galveston County,* 861 S.W.2d 861, 862 (Tex.1993). When the trial court grants one motion and denies the other, the reviewing court should determine all ques-

tions presented. *See Comm'rs Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

The parties do not dispute the fact issues. Consequently, the issue presented on appeal, the interpretation of the appraisal procedure in the lease agreement, is purely a question of law. The law in regard to contract interpretation is clear and well-settled, and the interpretation of an unambiguous contract is reviewed de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999). A court may construe a contract as a matter of law if it is unambiguous and can be given a certain or definite legal meaning or interpretation. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). In construing an unambiguous contract, a court should attempt to harmonize and give effect to all provisions so that none is rendered meaningless. *Coker*, 650 S.W.2d at 393; *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 139 (Tex.App.-El Paso 1997, pet. denied).

The core issue involved in this appeal is the interpretation of the appraisal procedure in the lease contract.[1] Harmon argues that holding a meeting is a condition precedent to the Association's right to begin the appraisal process. Harmon also contends the lease contract provides deadlines for the Association's actions and that the Association did not act within those time frames. We disagree.

■ Harmon first argues the Association was required to meet and attempt to agree; his arguments are without merit. The lease contract states that the lessor and lessee shall meet and attempt to agree on a new valuation in the first three months. The lease contract does not, however, place the burden of ensuring this meeting occurs on either party. The lease contract also does not state that should this meeting not occur, no reappraisal may be performed. Instead the lease contract provides for either party to appoint an appraiser "should they fail so to meet and agree." Accordingly, the failure to meet and attempt to agree was not an absolute bar to obtaining a reappraisal. The lessors and the Association did not meet in the first three months, and the Association appointed an appraiser after the first three months. Harmon does not dispute that the Association hired an appraiser in April 2000—the first month after the three-month meeting period expired—and received the appraisal on May 25, 2000.

■ Harmon next argues the Association was required to designate a representative for appraisal and notify the lessors of such by April, "forthwith," and "promptly." These arguments are also without merit. The lease contract provides:

> Should they fail so to meet and agree within said three (3) months, Lessor and Lessee, each, shall forthwith by instrument in writing, a copy of which shall promptly be delivered to the other, appoint a representative.... Should either Lessor or Lessee so appoint a representative and notify the other thereof, but the one so notified not within such fourth month appoint a representative and notify the other, the one having appointed a representative and notified the other may thereupon cause a representative having the same qualifications as above stated for the defaulting party to be appointed....

The only reference to the "fourth month" addresses the acts by the party notified of

---

1. Section (d) of paragraph four of the lease addresses the appraisal procedure. Section (d) in its entirety is attached to this opinion.

an appraisal. By the terms of the lease contract, it was the lessors who were the party who was so notified and who did not appoint a representative by April—"within such fourth month." Harmon also argues that for the appointment to be made "forthwith," it had to be made in April. Whether the lease contract so requires is no matter, because the Association did appoint a representative for the appraisal in April—on April 20, 2000. Harmon also argues the notification must be in April in order for it to be considered as having occurred "promptly." We disagree. The Association did not receive the reappraisal until May 25, 2000, and less than two weeks later, the Association notified the lessors of its appraisal and requested the lessors to obtain their own appraiser. Harmon provides no authority or argument that twelve days could not satisfy the lease contract's requirement for "promptly," and we read nothing in the lease contract so indicating.

Harmon also contends the appointment and notification were required to occur within the month of April in order to allow the other party to also appoint a representative during the month of April. However, the lessors were free to appoint a representative themselves after no meeting or agreement occurred during the first three months. Nothing in the lease contract precluded the lessors from appointing a representative before they were notified by the Association, and nothing in the lease contract restricts the appointing of a representative solely to the month of April.

■ Harmon next argues the lease contract required that if the Association wished to seek a judge to appoint a representative, it had to do so "within no more than a few days." Again, we disagree. Harmon makes this contention because the lease contract, when addressing the steps to take should two representatives dis-

agree, provides: "Unless they shall so agree before expiration of the fifth month, they shall thereupon appoint a third person with the above qualifications to join in their deliberations." A third representative was never appointed or necessary in this case, so the reference to the fifth month is inapplicable.

Further, as Harmon states, the Association was not required, under the terms of the lease contract, to request an appointment by a court. The lease contract states that the party who has appointed a representative and has notified the other party of such *may* cause another representative to be appointed; the lease contract does not require a second representative to be sought or appointed. The Association opted not to seek a judge to appoint a second representative when the lessors chose not to appoint a representative in April 2000.

The Association eventually sought to have a representative appointed by a court, but that was only after the lessors refused to honor the reappraisal the Association secured in 2000. In a December 2000 letter to the lessors, after reminding the lessors they had been notified of their right to retain their own appraiser, the Association stated, "Having heard nothing from you, we assume that you will agree to the value set forth in the appraisal performed by [the Association's representative]." When the lessors did not agree, the Association requested the lessors to appoint their own representative in January 2001. The lessors, however, did not do so and continued to contest the reappraisal procedure.

Only after the lessors refused to accept the new rental amount based on the Association's reappraisal, and after the lessors asserted that failure to pay the previous decade's rental amount would be a breach of the lease contract, did the Association file its declaratory judgment action. In

that action, the Association did not seek to have a representative appointed, but sought to have the court declare that the Association had a valid reappraisal performed and that the lessors had the obligation to appoint a representative (because they were contesting the Association's appraisal). Harmon provides no argument that the lease contract precludes a party from filing a declaratory judgment action should one party refuse to comply with the new rental amount, and we find no such clause.

The Association subsequently moved for the court to appoint an appraiser. Although the information is found only in the pleadings and summary judgment motions, it is undisputed that as a part of that action, in November 2001, the Association moved for appointment of an appraiser, and the court granted that motion in February 2002. This motion was part of the declaratory judgment action and was in response to the lessors' refusal to comply with the terms of the 2000 reappraisal. We read nothing in the lease contract barring either party from engaging in legal remedies to enforce their rights under the reappraisal process.

Reading paragraph four as a requirement to "meet and attempt to agree" would render the next sentence—providing for an occurrence should the parties not meet and attempt to agree—meaningless. Accordingly, we do not interpret paragraph four as establishing any such condition precedent. *See Coker*, 650 S.W.2d at 393; *Hill*, 964 S.W.2d at 139. Further, we conclude the time frames that Harmon references, in regard to appointment of appraisers in the fourth month and the fifth month, are not conditions precedent to the Association's actions. Harmon's construction would allow lessors to defeat the Association's right to reappraise the property by refusing to participate in the process. Additionally, we conclude that by notifying the lessors within twelve days of receiving the reappraisal, the Association satisfied the lease contract's requirement of notifying the other party "promptly." We construe the lease contract as a matter of law, and conclude the Association was not barred from obtaining an appraisal in the manner it employed. The trial court reached a reasonable and correct interpretation of the meaning of paragraph four. Accordingly, we hold the trial court did not err in granting the Association's summary judgment motion nor in denying Harmon's summary judgment motion. We resolve Harmon's first and second issues against him.

### SETTLEMENT CREDIT

In his third issue, Harmon contends the trial court erred by entering judgment for the total amount of damages because the other defendants settled with the Association. Harmon complains the trial court erred in entering judgment against him for the full amount of damages found in the interlocutory summary judgment. He contends the remaining lessors settled with the Association for an amount greater than the damages found in the summary judgment order. Harmon failed to preserve this issue.

After the trial court entered final judgment against Harmon on June 9, 2003, Harmon did not file a motion to modify the judgment or a motion for new trial. Rule 33.1 requires a timely request or motion be made to the trial court sufficient to make the trail court aware of the complaint. Tex.R.App. P. 33.1(a). Although Harmon filed an untimely response to the Association's motion for entry of judgment four days after the entry of the judgment, his response does not attack the judgment entered on June 9, 2003. Without a motion to modify or a motion for a new trial,

Harmon failed to preserve this issue for our review. *See* Tex.R.App. P. 33.1(a); *cf. Bass v. Walker,* 99 S.W.3d 877, 889 (Tex. App.-Houston [14th Dist.] 2003, pet. denied); *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet,* 61 S.W.3d 599, 620 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (finding GTE would have waived a chapter 33 settlement credit argument on appeal because it did not request the credit in the trial court). We resolve Harmon's third issue against him.

We affirm the judgment of the trial court.

### Appendix

Section (d) of Paragraph Four addresses the appraisement procedure:

(d) The value of the leased premises shall by appraisement, as hereinafter provided, be determined as of the twentieth anniversary of the commencement of this lease and each ten (10) years thereafter. Each such determination of value shall be made during the lease year immediately preceding the lease year as of which such valuation shall become effective as a base for monthly rental determination. Within the first three (3) months of the lease year in which such appraisal is to be made, Lessor and Lessee shall meet and attempt to agree upon the new valuation. If they so agree, they shall reduce their agreement to writing, and each retain an executed copy thereof. Should they fail so to meet and agree within said three (3) months, Lessor and Lessees, each, shall forthwith by instrument in writing, a copy of which shall promptly be delivered to the other, appoint a representative, who shall be a member of the American Institute of Real Estate Appraisers or a similar organization, to meet with such other's representative in an attempt to agree upon a valuation.

Should either Lessor or Lessee so appoint a representative and notify the other thereof, but the one so notified not within such fourth month appoint a representative and notify the other, the one having appointed a representative and notified the other may thereupon cause a representative having the same qualifications as above stated for the defaulting party to be appointed by the person who shall then be the Senior United States District Judge for the Northern District of Texas, at Dallas, or by the judge of any state district court of Dallas County, Texas, who is hereby requested by the parties hereto to make such an appointment, and any other appointment which he shall be authorized hereunder to make. The two representatives so appointed shall promptly meet and attempt to agree upon a valuation. Unless they shall so agree before expiration of the fifth month, they shall thereupon appoint a third person with the above qualifications to join in their deliberations. Should such a third person not be so appointed before expiration of the sixth month, the appointment shall be made by the aforesaid Judge, upon request of Lessor or Lessee. Promptly after appointment of the third person, the three shall attempt to agree upon a valuation, and in event of failure of all to agree, the decision of any two shall be conclusive. The decision or decisions in any such case shall be reduced to writing, signed by said three persons, and copies thereof delivered to Lessor and Lessee. Rent for the ten (10) years following the date as of which each such appraisal is to be effective or for the remainder of the term of this lease, if less than ten (10) years, shall be determined by reference thereto, it being understood that the effective date for the first monthly rental payment so determined shall be the day next following

the close of the last lease year for which rent is specified in subparagraph (a) above, if no previous appraisal shall have been made, otherwise, at the close of the last lease year in which rent was based upon the latest previous appraisal. Lessor and Lessee shall severally compensate their respective appointees, and shall bear equally the compensation payable to any third person, as well as all other expenses reasonably incident to the appraisal.