**Ben E. JARVIS, Bruce Wilder, Jarvis Oil Company, and Wildco Resources, Inc., Appellants,**

v.

**ROCANVILLE CORPORATION and Dalvant Corporation, Appellees.**

No. 05–07–00091–CV.

Court of Appeals of Texas, Dallas.

Aug. 24, 2009.

Rehearing Overruled Sept. 30, 2009.

M. Keith Dollahite, M. Keith Dollahite, P.C., Tyler, TX, for appellants.

Daylen K. Gallman, Blake L. Beckham, The Beckham Group, Susan Hays, Law Office of Susan Hays, PC, Dallas, TX, for appellees.

Before Justices BRIDGES, RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

Appellants Ben E. Jarvis and Bruce Wilder, and their respective operating companies, appellants Jarvis Oil Company and Wildco Resources, Inc., were plaintiffs and counter-defendants below (collectively, Plaintiffs). They appeal from a partial summary judgment and a final judgment issued after a nonjury trial in favor of appellees Rocanville Corporation and Dalvant Corporation, defendants and counter-plaintiffs below (collectively, Defendants). We overrule Plaintiffs' issues on appeal and affirm the trial court's partial summary judgment and final judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying dispute in this case concerns (1) the operating expenses for an oil well in Kaufman County known as the Melton Well, and (2) the land and auxiliary equipment across a county road from the Melton Well.

### The Parties

Defendants are the majority interest owners in, and operators of, the Melton Well and its auxiliary equipment. Plaintiffs are or were minority interest owners in the Melton Well. The parties have had interests in the Melton Well for more than 30 years and have had ongoing disputes arising from their interests over the last several years.

### The Melton Well, the Auxiliary Equipment, and the Property at Issue

The Melton Well produces a mixture of crude oil, saltwater, natural gas, and hydrogen sulfide gas (also known as sour gas). The auxiliary equipment used in connection with the Melton Well's operation is located directly across a county road from the well on three acres of land formerly leased by Dalvant and currently leased by Rocanville (the Rocanville Land).

The auxiliary equipment includes (1) a gas plant used to process and store the usable natural gas produced from the Melton Well, (2) a flare stack used to burn off the sour gas from the Melton Well, and (3) a saltwater disposal well known as the Musgraves Saltwater Disposal Well. The Rocanville Land is bordered on one side by the county road and is surrounded on the other three sides by land owned by Jarvis and Wilder (the Jarvis/Wilder Land).[1]

Two underground pipes, a water pipe and a gas pipe, run from the Melton Well, underneath the county road, to the auxiliary equipment on the Rocanville Land. It is undisputed that after they cross under the road, and before they get to the Rocanville Land, those two pipes run underneath a corner of the Jarvis/Wilder Land for a short distance. It is also undisputed that one of the three wires (known as "guy wires" or "guy lines") used to hold up the flare stack is tethered to the ground on the Jarvis/Wilder Land. Plaintiffs also claim that the well bore for the Musgraves Saltwater Disposal Well encroaches, in part, on the Jarvis/Wilder Land.

### The First Lawsuit

The parties have made claims against each other in at least two other lawsuits.[2] The first lawsuit ended with, in pertinent part, an agreed final judgment dated September 18, 2000[3] against Jarvis Oil and Wildco, for $150,000 and $100,000, respectively, on Rocanville's counterclaim for shared expenses relating to the operation of the Melton Well, known as "joint-interest billings." In what Plaintiffs describe as the "[p]artial [s]ettlement" of that lawsuit, instead of executing on the judgment, Rocanville essentially agreed to collect the amounts due under that judgment from Jarvis Oil and Wildco's share of future revenues from the Melton Well's production. Apparently, Rocanville has not yet recovered from Jarvis Oil and Wildco's royalties all of the amounts due under that judgment because Plaintiffs state that Jarvis Oil and Wildco "have not received any revenue attributable to their working interests in the Melton Well" since the time of the partial settlement.

### The Second Lawsuit

In the second lawsuit, "Plaintiffs sued Defendants in trespass to require Defendants to remove all pipelines, guy wires, guy wire anchors, and other tangible items that emanated from or went to the Gas Plant and which touched, crossed, or were above, below, or through the Jarvis/Wilder [Land]." In response, Defendants asserted affirmative defenses to the trespass

---

1. According to Plaintiffs, Jarvis and Wilder own all of the surface estate and 7/8ths of the mineral estate.

2. In their appellate briefing, the parties expressly identify three lawsuits: (1) the lawsuit that resulted in a final judgment issued in 2000 ("the first lawsuit"), (2) the lawsuit that resulted in a settlement and dismissal of all claims in 2004 ("the second lawsuit"), and (3) the lawsuit at issue in this appeal ("this lawsuit"). But in Defendants' motion for summary judgment, which is included in our appellate record, Defendants describe the second lawsuit as "one of many in which Plaintiffs have sued Defendants."

3. The final judgment from the first lawsuit, trial court cause number 49947 in the 86th

Judicial District Court in Kaufman County, is included in our appellate record. That judgment indicates that in the first lawsuit: (1) four individuals, including Jarvis and Wilder, sued multiple defendants, including Rocanville and Dalvant, (2) Wildco and Jarvis Oil were added as third-party defendants, and (3) the parties asserted multiple claims, counterclaims and cross-claims. The final judgment also indicates that (1) on the second day of trial in that case, the plaintiffs "non-suited their claims against defendants," (2) the parties settled several of the other claims, and (3) the trial court held a nonjury trial and rendered judgment on the defendants' remaining claims.

claim and counterclaimed for the amount they claimed was overdue for additional joint-interest billings. The parties settled the second lawsuit and agreed to dismiss all claims with prejudice. The parties' settlement agreements, dated December 1, 2004, expressly permitted the equipment "encroachments" on the Jarvis/Wilder Land and required Rocanville to "rework" a non-operating oil well on the Jarvis/Wilder Land, known as the Musgraves Oil Well, by March 2005.

**This Lawsuit**

Plaintiffs filed this lawsuit against Defendants in April 2005. In their second amended petition,[4] Plaintiffs allege that Rocanville breached the settlement agreements from the second lawsuit by failing to rework the Musgraves Well, and argued that Rocanville's breach "automatically terminated" those settlement agreements. Plaintiffs asked the trial court to "declare that Defendant Rocanville's breach and default terminated the [settlement agreements]." They also asked the court to declare that, without the rights that existed only under the settlement agreements, the equipment "encroachments" "constitute a trespass on the Jarvis/Wilder [Land]." Plaintiffs sought a mandatory injunction "ordering Defendants, at their sole cost and expense, to remove the Encroachments from the Jarvis/Wilder [Land]," and a permanent injunction "enjoin[ing] Defendants from placing any other encroachments upon or otherwise trespassing upon the Jarvis/Wilder [Land]." Jarvis and Wilder also sought a declaratory judgment relating to the operation of the gas plant.[5] In response, Defendants filed a general denial and also asserted

multiple affirmative defenses including res judicata, quasi estoppel, and adverse possession. Rocanville also asserted a "breach-of-contract/sworn-account" counterclaim against Jarvis and Wilder for additional overdue joint-interest billings for the Melton Well that accrued after the agreed final judgment was rendered in the first lawsuit. Defendants also asserted a claim for attorneys' fees under civil practice and remedies code sections 37.009 and 38.001.

Plaintiffs filed motions for summary judgment on their claims and Defendants' counterclaims and affirmative defenses, and the trial court denied those motions. Defendants filed motions for summary judgment on multiple claims, including plaintiffs' request for declarations that Rocanville breached the settlement agreements and that the "encroachments" constituted a trespass. The trial court granted summary judgment in favor of Defendants on Plaintiffs' claim for declaratory relief regarding the alleged encroachments and denied summary judgment on other claims. After a six-day nonjury trial the trial court issued a final judgment on the remaining claims. Pertinent to this appeal, the trial court denied Jarvis and Wilder's request for declaratory judgment relating to the operation of the gas plant, denied Plaintiffs' request for declaratory relief or injunction, granted Rocanville's breach-of-contract/sworn-account counterclaim against Jarvis and Wilder, and granted Defendants' claim for attorneys' fees against Plaintiffs. Plaintiffs timely requested, and the trial court timely filed, findings of fact and conclu-

---

4. Plaintiffs' second amended petition appears to be their live petition at the time of the trial court's partial summary judgment in favor of defendants through the time of the trial court's final judgment. Their second amended petition is the final petition included in our

appellate record, and is the only petition cited by the parties.

5. Plaintiffs also asserted other claims that are not at issue in this appeal.

sions of law. Plaintiffs also filed a motion for new trial, which was apparently overruled by operation of law.

### ISSUES ON APPEAL

In a combined appellants' brief, Plaintiffs identify the issues on appeal as follows:

1. Did the trial court err in denying Jarvis and Wilder's request for a declaratory judgment that—

 - under the principle of res judicata, the dismissal with prejudice of the second lawsuit negated all of Rocanville's [6] possible claims existing *before* December 1, 2004, for having the encroachments on Jarvis and Wilder's land;

 - as a result, *after* December 1, 2004, the settlement agreements provided the sole legal basis for Rocanville to have the encroachments on Jarvis and Wilder's land;

 - Rocanville's failure to rework the Musgraves Well on or before March 1, 2005 terminated the sole legal basis for Rocanville to have the encroachments on Jarvis and Wilder's land;

 - as a result, Rocanville should be ordered to remove the encroachments from Jarvis and Wilder's land and enjoined from trespassing on their land?

2. Did the trial court err in denying Jarvis and Wilder's motion for summary judgment for this declaratory judgment?

3. Did the trial court err in partially granting Rocanville's motion for summary judgment?

4. Did the trial court err in ordering [Jarvis Oil] to pay $93,302.97 and Wildco to pay $80,053.47 to Rocanville for operating expenses for the Melton Well?

5. Did the trial court err in ordering Jarvis, Wilder, [Jarvis Oil] and Wildco, "jointly and severally," to pay $75,000 in attorney's fees to Rocanville? [7]

### Plaintiffs' Third Issue

We address Plaintiffs' third issue first because our resolution of that issue is also dispositive of other issues on appeal. In their third issue, Plaintiffs challenge the trial court's order partially granting Defendants' motion for summary judgment.

### Relevant Facts

In their motion for summary judgment, Defendants argued that they were entitled to judgment in their favor as a matter of law on Plaintiffs' trespass claim on several separate grounds. First, they argued that Plaintiffs could not establish a trespass claim because "when read together, the 1973 Surface Lease and the 1994 Warranty Deed specifically allow for placement of the alleged encroachments by Defendants." Alternatively, Defendants argued that "they have conclusively established their defenses of res judicata, estoppel, and adverse possession." Plaintiffs filed a written response in which they opposed each of Defendants' four alternative grounds for summary judgment on the

---

**6.** In their appellate brief, Plaintiffs explain that "Rocanville and Dalvant are affiliated companies" and they refer to them collectively as "Rocanville."

**7.** In their "issues presented," Plaintiffs also identify a sixth issue: "Did the trial court err in making findings of fact and conclusions of law that are contrary to the positions of [Plaintiffs] in this appeal?" This issue, however, is not separately briefed and instead appears to be encompassed within Plaintiffs' other issues. Consequently, we do not address it separately.

trespass claim—including Defendants' three affirmative defenses.

The trial court's order granting summary judgment in favor of Defendants on Plaintiffs' trespass claim states as follows:

Defendants' request for summary judgment holding that they have established as a matter of law that the 1973 Lease and Warranty Deed of 1994 read together allow for the alleged encroachments of the pipeline and guy line onto Plaintiffs' property is GRANTED.

Defendants' request for summary judgment holding that they have established, as a matter of law, a defense to Plaintiffs' encroachment claims is GRANTED.

**Applicable Law and Standard of Review**

To prevail on a motion for summary judgment brought pursuant to Texas Rule of Civil Procedure 166a(c), a movant must show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004). A defendant is entitled to summary judgment if the defendant either negates at least one element of the plaintiff's claim or pleads and conclusively proves each element of an affirmative defense to that claim. TEX.R. CIV. P. 166a(c); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996).

When a party moves for summary judgment on multiple grounds and the trial court's order granting summary judgment does not specify the ground or grounds on which it was based, a party who appeals that order must negate all possible grounds upon which the order could have been based by either asserting a separate issue challenging each possible ground, or asserting a general issue that the trial court erred in granting summary judgment and within that issue providing argument negating all possible grounds upon which summary judgment could have been granted. *See Borsella v. Whitis*, No. 05–06–00617–CV, 2007 WL 2325813, at *2 (Tex.App.-Dallas Aug. 15, 2007, no pet.) (mem. op.) (citing *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970)). If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground. *See Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 875 (Tex.App.-Dallas 2005, no pet.) ("[A] reviewing court will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted.").

**Analysis**

On appeal, although Plaintiffs raise a general issue challenging the trial court's summary judgment on the trespass claim, Plaintiffs do not challenge all four possible grounds for summary judgment.[8] Specifi-

---

8. In a footnote in their brief appended to their list of issues presented, Plaintiffs state that their third issue "is intended to challenge all possible grounds upon which the partial summary judgment was granted." When an appellant challenges a summary judgment that could have been based on alternative grounds, however, that appellant cannot negate all possible grounds on appeal by merely stating that its appeal is intended to challenge

all possible grounds. Instead, as we explain above, if an appellant asserts a general issue that the trial court erred in granting summary judgment, that appellant must also provide appropriate arguments within that issue negating all possible grounds upon which summary judgment could have been granted. *See Borsella*, 2007 WL 2325813, at *2; *see generally* TEX.R.APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the

cally, they do not provide argument negating Defendants' three affirmative defenses as grounds for summary judgment. Instead, Plaintiffs argue that the trial court granted summary judgment on only the first ground, and that in the second paragraph, the trial court simply "ruled that [the first ground] was 'a defense' to [Plaintiffs'] encroachment claims." In response, Defendants argue that the trial court's second paragraph cited above was a general grant of summary judgment on one of their alternative affirmative defenses and that we must affirm the summary judgment on the trespass claim because Plaintiffs did not challenge on appeal all possible grounds for summary judgment on that claim. We agree with Defendants.

■ In construing the trial court's summary judgment order, we must construe it as a whole and give effect to every provision. *See Stettner Clinic, Inc. v. Burns,* 61 S.W.3d 16, 18–19 (Tex.App.-Amarillo 2000, no pet.) (citing *Wilde v. Murchie,* 949 S.W.2d 331, 333 (Tex.1997), and *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1987)). Here, the trial court's order tracks the language of Defendants' motion for summary judgment. Defendants argued that they were entitled to summary judgment on Plaintiffs' trespass claim because "when read together, the 1973 Surface Lease and the 1994 Warranty Deed specifically allow for placement of the alleged encroachments by Defendants." Tracking that language, the trial court's order states that "Defendants' request for summary judgment holding that they have established as a matter of law that the 1973 Lease and Warranty Deed of 1994 read together allow for the alleged encroachments of the pipeline and guy line onto Plaintiffs' property is GRANTED." Alternatively, Defendants argued that they were entitled to summary judgment on Plaintiffs' trespass claim because "they have conclusively established their defenses of res judicata, estoppel, and adverse possession." Tracking that language, the trial court's order states that "Defendants' request for summary judgment holding that they have established, as a matter of law, a defense to Plaintiffs' encroachment claims is GRANTED." Consequently, we cannot construe the second paragraph cited above as Plaintiffs suggest. Instead, we construe that paragraph as a general grant of summary judgment on one of Defendants' three alternative affirmative defenses.[9] And because Plaintiffs do not challenge each of those possible grounds for summary judgment on appeal, we must affirm the summary judgment in favor of Defendants on Plaintiffs' trespass claim. *See Adams,* 154 S.W.3d at 875. We overrule Plaintiffs' third issue.

### Plaintiffs' First and Second Issues

In their first issue, Plaintiffs argue that the trial court erred when it rendered its final judgment denying their requests for declaratory judgment ordering removal of the equipment "encroachments."[10] And in

contentions made, with appropriate citations to authorities and to the record.").

9. We also note that Plaintiffs' argument about the second paragraph in the trial court's summary judgment order contradicts the argument they raised below. After the summary judgment order was signed, Plaintiffs filed a motion to modify, reform, or correct the judgment, in which they complained to the trial court that the summary judgment order did not specify "which 'defense' was established."

In that motion, Plaintiffs essentially argued that the order was ambiguous because the "defense" identified in the second paragraph could be either (1) that the 1973 Lease and 1994 Warranty Deed permitted the alleged encroachments, or (2) one of Defendants' three affirmative defenses.

10. Within this issue, Plaintiffs argue that the trial court erroneously concluded that (1) Plaintiffs failed to establish the necessary elements of "an actual breach" and damages to

their second issue, Plaintiffs argue that the trial court erred when it denied their motion for summary judgment requesting that relief.

Plaintiffs wanted the trial court to declare that "Defendant Rocanville's breach and default terminated the [settlement agreements]" and that "as of the date of termination of the [settlement agreements], Defendants Rocanville and Dalvant lost any and all rights to have the Encroachments in place on the Jarvis/Wilder [Land]." [11] Plaintiffs' argument that they were entitled to this relief is premised on their contention that the settlement agreements provided the only basis for allowing the "encroachments." But as we discussed in connection with Plaintiffs' third issue, the trial court determined that Defendants conclusively established, as a matter of law, at least one of their affirmative defenses regarding the alleged "encroachments." As a result, and regardless of whether Rocanville breached the settlement agreements, the settlement agreements did not provide the only basis for allowing the "encroachments." And the trial court's summary judgment allowing the "encroachments," which we must affirm because Plaintiffs do not challenge Defendants' affirmative defenses on appeal, is inconsistent with Plaintiffs' arguments in their first and second issues that the trial court should have ordered, either on summary judgment or after trial, that the "encroachments" should be removed. Consequently, we must overrule issues one and two.

support their breach-of-contract claim against Rocanville, and (2) "Plaintiffs failed to establish any of the elements entitling them to declaratory relief."

11. In their appellants' brief, Plaintiffs explain that

they didn't seek damages, but rather a declaratory judgment that the settlement agreements terminated. Rocanville's fail-

## Plaintiffs' Fourth Issue

In their fourth issue, Plaintiffs challenge the trial court's judgment against Jarvis Oil and Wildco on Rocanville's counterclaim for "breach of contract/sworn account." In that claim, Rocanville sought to recover additional overdue joint-interest billings for the Melton Well that accrued after the agreed final judgment was rendered in the first lawsuit. The trial court found in favor of Rocanville, granted judgment against Jarvis Oil for $93,302.97, granted judgment against Wildco for $80,053.47, and awarded Rocanville ten percent postjudgment interest.

■ On appeal, Plaintiffs argue that the trial court's judgment in favor of Rocanville on this claim "violate[s] section 12 of the Operating Agreement." More specifically, Plaintiffs note that "Rocanville has not yet collected the full amount of the judgment in the first lawsuit from the revenue attributable to their working interests in the Melton Well." And they argue that under section 12 of the operating agreement, Jarvis Oil and Wildco are required to contribute to shared expenses for operating the Melton Well only after Rocanville finishes collecting the full amount of its judgment from the first lawsuit out of Jarvis Oil and Wildco's share of the Melton Well's revenue. To support their argument, Plaintiffs cite and emphasize the following language from section 12:

ure to rework the Musgraves Well caused a termination of the settlement agreements, and as a result, Jarvis and Wilder are entitled to an order requiring Rocanville to remove its encroachments and an order canceling the settlement agreements, under which Rocanville received valuable rights, which it should be ordered to return.

If and when [Rocanville] recover[s] from [Jarvis Oil and Wildco's] relinquished interest the amounts provided for above, the relinquished interests of [Jarvis Oil and Wildco] shall automatically revert to [Jarvis Oil and Wildco] and *from and after such reversion* [Jarvis Oil and Wildco] shall own the same interest in such well ... and the production therefore as [Jarvis Oil and Wildco] would have owned had [Jarvis Oil and Wildco] participated in the ... reworking ... of said well. *Thereafter, [Jarvis Oil and Wildco] shall be charged with and shall pay [their] proportionate part of the further costs of the operation* of said well in accordance with the terms of this agreement.

In response, Defendants argue that section 12 "deals specifically and exclusively with costs related to drilling, reworking, deepening, or plugging of a well," not to interest owners' share of expenses for the Melton Well's ongoing operations. In other words, Defendants argue that section 12 does not preclude Rocanville's claim against Jarvis Oil and Wildco for overdue joint-interest billings for the Melton Well's ongoing operations. We agree with Defendants.

 Interpretation of an unambiguous contract is purely a question of law, which we review de novo. *Harmon v.*

*1401 Elm St. Condo. Ass'n*, 139 S.W.3d 411, 414 (Tex.App.-Dallas 2004, no pet.) (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999)). When we construe an unambiguous contract, we "attempt to harmonize and give effect to all provisions so that none is rendered meaningless." *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

Section 12 is titled "OPERATIONS BY LESS THAN ALL PARTIES," and that section, including the provision quoted by Plaintiffs, relates to drilling additional wells or reworking other dry holes. Consequently, we conclude that Rocanville's claim against Jarvis Oil and Wildco for overdue joint-interest billings for the Melton Well's ongoing operations is not precluded by section 12. We overrule appellant's fourth issue.[12]

### Plaintiffs' Fifth Issue

In their fifth issue, Plaintiffs challenge the trial court's award of $75,000 in attorneys' fees in favor of Defendants.

### Relevant Facts

In their supplemental second amended answer and counterclaims,[13] Defendants pleaded for attorneys' fees under civil practice and remedies code sections 37.009

---

**12.** Plaintiffs also argue that the trial court erred in entering judgment on Rocanville's sworn account claim because "the transactions between Rocanville, as operator, as JOC and Wildco, as non operators, are not within the scope of Tex.R. Civ. P. 185, which governs suits on sworn account." Appellants do not cite the record to support this statement, or otherwise explain how or why the judgment is precluded by rule 185. Consequently, we conclude that this argument is inadequately briefed. *See* Tex.R.App. P. 38.1(i). Moreover, Plaintiffs do not cite the record to demonstrate that they raised this argument in the trial court and obtained a ruling. Consequently, we conclude that Plaintiffs have not

demonstrated that they preserved this issue for appellate review. *See* Tex.R.App. P. 33.1(a). We note, however, that in *Vance v. Holloway*, 689 S.W.2d 403 (Tex.1985), the supreme court upheld a trial court's judgment in an oil-well operator's sworn-account suit against a working interest owner to recover past-due operating expenses.

**13.** Defendants' supplemental second amended answer and counterclaims appears to actually be their third amended answer and counterclaims, and their live pleading at the time of trial and at the time of the trial court's final judgment.

and 38.001. As part of their discovery requests, Plaintiffs asked Defendants to produce documents relating to their claim for attorneys' fees, including billing records. In response, Defendants submitted fee statements from April 2005 to April 2006 reflecting a total of $45,128 in attorneys' fees. At the time of trial in October 2006, Defendants told the trial court they were seeking $150,000 in attorneys' fees through trial. To support their request, Defendants produced for the first time, as part of their trial exhibits, fee statements reflecting fees incurred from May 2006 to the start of trial. Defendants' attorney testified that Defendants' fees up to the start of trial were $90,805.50 in billed fees, plus $22,121.25 in unbilled fees. Defendants' attorney also testified that Defendants would incur "about another $50,000" in attorneys' fees for trial. Defendants' attorney testified that his clients' attorneys' fees were reasonable and necessary, based on relevant factors including the length and complexity of the case, the time and skill required of the attorneys, the nature and length of the professional relationship with the clients, and the fees customarily charged in Dallas. In response, Plaintiffs did not submit any controverting testimony or other evidence about Defendants' attorneys' fees. Plaintiffs did, however, timely object to any evidence about fees incurred from April 2006 until the start of trial because the fee statements reflecting those fees were not produced during discovery. The trial court carried Plaintiffs' objection and later overruled it. Plaintiffs also objected to Defendants' evidence on the grounds that (1) their attorneys' fees were not adequately segregated among parties and claims, and (2) the fee statements submitted as evidence were extensively redacted, "mak[ing] it difficult, if not impossible, to evaluate their claim of segregating those fees." In response, the trial court overruled the objections and

stated, "I'll take your response about the weight to be given at the time."

In its final judgment, the trial court awarded Defendants $75,000 in attorneys' fees. In its written findings of fact the trial court stated that Defendants spent $150,000 in attorneys' fees through the end of trial. And in its conclusions of law, the trial court explained its ruling on attorneys' fees as follows:

> [Defendants] were successful in proving their action for breach of contract, suit on sworn account, and in defeating the requests for declaratory judgments asserted by [Plaintiffs]. Accordingly [Defendants] are entitled to $75,000 for reasonable and necessary attorneys' fees [f]or which [Plaintiffs] are jointly and severally liable. This court finds that the amount of $75,000 was supported by sufficient evidence, and was inextricably intertwined and not capable of further segregation.

### Applicable Law and Standard of Review

Under section 37.009 of the civil practice and remedies code, a trial court can award attorneys' fees to the prevailing party in a declaratory judgment action, including a party who successfully defends against a declaratory judgment claim, if the trial court believes such fees to be reasonable and necessary and the award of such fees to be equitable and just. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 2008); *see also Mitchell v. Fort Davis State Bank*, 243 S.W.3d 117, 126–27 (Tex.App.-El Paso 2007, no pet.) (trial court acted within its discretion in awarding attorneys' fees to defendant who defeated declaratory judgment claim). Likewise, under section 38.001 of the civil practice and remedies code, a trial court can award attorneys' fees to the prevailing party in a sworn-account or breach-of-contract claim. *See*

TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(7), (8).

■ There are several factors a trial court should consider in determining the amount of reasonable attorneys' fees to award. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp. 2008) (Tex. State Bar R. art. X, § 9); *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex.1997); *Hays & Martin, L.L.P. v. Ubinas–Brache,* 192 S.W.3d 631, 636 (Tex.App.-Dallas 2006, pet. denied). These factors include: the time, labor, and skill required to properly perform the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal community for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation and ability of the lawyer performing the services. *Arthur Andersen & Co.,* 945 S.W.2d at 818. But a trial court is not required to receive evidence on each of these factors. *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.,* 113 S.W.3d 889, 897–98 (Tex. App.-Dallas 2003, no pet.). The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *Id.* at 897.

■ When a trial court sits as the trier of fact, the amount of a fee award generally rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion. *See Bair Chase Prop. Co., LLC v. S & K Dev. Co., Inc.,* 260 S.W.3d 133, 138 (Tex.App.-Austin 2008, pet. denied); *Alford v. Johnston,* 224 S.W.3d 291, 298 (Tex.App.-El Paso 2005, pet. denied).

Sufficiency of the evidence to support the award is a relevant factor in assessing whether the trial court abused its discretion. *Lesikar v. Moon,* 237 S.W.3d 361, 375 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).

### Analysis

■ In their fifth issue, Plaintiffs make numerous arguments to support their contention that the award of attorneys' fees to Defendants is improper. First, Plaintiffs argue that there is no basis for an award of fees against Jarvis and Wilder individually because Defendants did not prevail on a claim against them individually. In response, Defendants argue that an award of attorneys' fees against Jarvis and Wilder is proper because Defendants successfully defended against Jarvis and Wilder's request for a declaratory judgment that they own an undivided interests in the gas plant. We agree with Defendants. It is undisputed that the trial court denied Jarvis and Wilder's request for declaratory judgment against Defendants concerning rights in the gas plant. Consequently, we disagree that there was no basis to award attorneys' fees against Jarvis and Wilder individually. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Mitchell,* 243 S.W.3d at 126–27.

■ Plaintiffs also argue that there was no basis to award fees against Jarvis Oil and Wildco because Rocanville's breach-of-contract/sworn-account claim was precluded by section 12 of the joint operating agreement and Defendants did not prevail on a claim for declaratory judgment. We disagree. We have already concluded that Rocanville's sworn-account claim against Jarvis Oil and Wildco was not precluded by section 12 of the operating agreement. And the trial court's judgment in favor of Rocanville on that claim serves as a basis for an award of attorneys'

fees to Rocanville. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(7), (8). It is also undisputed that the trial court denied Jarvis Oil and Wildco's claim for a declaratory judgment that Rocanville breached the settlement agreements, and a trial court can award attorneys' fees to a party who successfully defends against a declaratory judgment claim. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *see also Mitchell,* 243 S.W.3d at 126–27. Consequently, conclude that there were multiple bases upon which to award attorneys' fees against Jarvis Oil and Wildco.

■ Plaintiffs also argue that the evidence is legally insufficient to support the award of attorneys' fees to Defendants because "[t]he award of $75,000 has no connection whatsoever to any evidence offered by [Defendants]." Plaintiffs argue that the trial court impermissibly "pulled the figure of $75,000 'out of a hat' with no rational basis in the evidence." They also argue that the evidence to support Defendants' request for $50,000 in attorneys' fees for trial was factually insufficient because it consisted solely of an attorney's conclusory testimony. We disagree.

■ Documentary evidence is not a prerequisite to an award of attorneys' fees. *See, e.g., In re A.B.P.,* 291 S.W.3d 91, 98–100 (Tex.App.-Dallas 2009, no pet.). Instead, testimony from a party's attorney is taken as true as a matter of law and is alone sufficient to support an award of attorneys' fees if the testimony is clear, positive, direct, and free from contradiction. *Id.* at 98. This is especially true where the opposing party had the means and opportunity to disprove the testimony but failed to do so. *Id.* Nevertheless, the trial court is not bound by even uncontroverted attorneys' fees evidence and may award less than requested. *See, e.g., MacCallum v. MacCallum,* 801 S.W.2d 579, 587 (Tex.App.-Corpus Christi 1990, writ

denied) (attorney's uncontradicted testimony about his experience, hourly rate, services provided, and reasonableness of $2,161 in attorneys' fees charged was sufficient to support award of $1,680 in attorneys' fees).

Here, Defendants submitted evidence of $150,000 in reasonable and necessary attorneys' fees through the end of trial, including their attorney's testimony that their reasonable and necessary attorneys' fees for trial would be $50,000. Plaintiffs did not object to Defendants' evidence of $45,128 in reasonable and necessary attorneys' fees from April 2005 to April 2006, or submit any controverting evidence about those fees. Moreover, Plaintiffs did not submit any conflicting evidence, or otherwise controvert, Defendants' attorney's testimony that their reasonable and necessary attorneys' fees for trial would be $50,000. Consequently, we conclude that the trial court had sufficient uncontroverted evidence upon which to exercise its discretion.

Plaintiffs also argue that Defendants should "take nothing on [their] claim for attorney's fees" because they waited until the time of trial to submit fee statements reflecting fees incurred between April 2006 and the time of trial. Plaintiffs argue that Defendants did not "establish good cause for the failure to timely produce the information or the lack of unfair surprise or prejudice to [Plaintiffs] as required by Tex.R. Civ. P. 193.6." We do not need to address this argument because even if we concluded that the trial court abused its discretion by not excluding from evidence the fee statements and related testimony concerning fees incurred between April 2006 and the time of trial, the remaining evidence would support the award of $75,000 in attorneys' fees. Again, Plaintiffs did not object to Defendants' evidence of $45,128 in reasonable and necessary at-

torneys' fees from April 2005 to April 2006, nor did Plaintiffs submit any conflicting evidence, or otherwise controvert, Defendants' attorney's testimony that their reasonable and necessary attorneys' fees for trial would be $50,000. This uncontroverted evidence supports the trial court's judgment.

Plaintiffs also argue that Defendants are not entitled to attorneys' fees because they did not adequately segregate their fees "among the multitude of parties and claims." We disagree. Defendants' attorney testified that he segregated their reasonable and necessary attorneys' fees as much as possible and that the fees were not capable of further segregation because the claims that allowed for the recovery of fees were dependent upon the same facts as the other claims and much of the work done necessarily applied to multiple claims. He also noted that the case started with Plaintiffs' claims for declaratory judgment, which allowed Defendants to seek attorneys' fees starting at the beginning of the case; but Defendants only sought to recover the attorneys' fees they incurred once they filed their sworn-account counterclaim. Although Plaintiffs generally complained to the trial court that Defendants' fees were not sufficiently segregated, they did not submit any controverting testimony or other evidence to demonstrate that those fees were not adequately segregated or were capable of further segregation. And although it overruled their objection to the lack of sufficient segregation, the trial court indicated that it would consider Plaintiffs' complaint when weighing the evidence. After the close of the evidence, the trial court found that Defendants spent $150,000 in attorneys' fees through the end of trial, but concluded that only $75,000 in attorneys' fees "was supported by sufficient evidence, and was inextrica-

bly intertwined and not capable of further segregation." We conclude that the evidence supports the trial court's exercise of its discretion.

Plaintiffs also argue that "[b]y allowing Rocanville to introduce into evidence fee statements that were so redacted they prevented effective cross-examination, the trial court committed an error that probably prevented the proper presentation of complaints to this Court." Plaintiffs did not argue to the trial court, however, that the redacted fee statements prevented effective cross-examination. Consequently, we conclude that Plaintiffs have not preserved that argument for appellate review. TEX.R.APP. P. 33.1; *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex.App.-Dallas 2009, no pet.) ("To preserve an error for appeal, a party's argument on appeal must comport with its argument in the trial court."). And Plaintiffs do not cite the record to support their argument, do not describe how or why the fee statements were improperly redacted, and do not cite any authority that demonstrates that the trial court erred by admitting the fee statements into evidence. Consequently, we conclude that this argument was inadequately briefed. TEX.R.APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

Finally, Plaintiffs argue that (1) it was improper to award attorneys' fees against them jointly and severally, and (2) the award of fees is not equitable and just. Plaintiffs, however, do not cite the record to demonstrate that they raised these arguments in the trial court either before or after the trial court rendered its final judgment. Consequently, we conclude that Plaintiffs have not preserved these arguments for appellate review. TEX.R.APP. P.

33.1; *Birnbaum v. Law Offices of G. David Westfall, P.C.,* 120 S.W.3d 470, 476 (Tex.App.-Dallas 2003, pet. denied) ("Without a proper presentation of the alleged error to the trial court, a party does not afford the trial court the opportunity to correct the error.").

### CONCLUSION

We overrule Plaintiffs' issues on appeal and affirm the trial court's partial summary judgment and final judgment.