

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00185-CV

LANCE BRANDON LOUDDER, 2L FARMS, A TEXAS PARTNERSHIP,
AND TERRI LOUDDER, APPELLANTS

V.

CROP QUEST, INC., APPELLEE

On Appeal from the 242nd District Court
Castro County, Texas
Trial Court No. B9355-1108, Honorable Edward Lee Self, Presiding

July 8, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK, J., and BOYD, S.J.[1]

Lance Brandon Loudder, Terri Loudder, and 2L Farms appeal from a judgment denying them recovery against Crop Quest, Inc. The former had sued the latter asserting causes of action sounding in deceptive trade practice, fraud, breach of contract and negligence. Crop Quest filed two "no evidence" motions for summary judgment, which motions the trial court granted. The Loudders and 2L Farms contend before us that the decisions were wrong and summary judgments should not have been rendered. We affirm.

---

[1] John T. Boyd, Senior Justice retired, sitting by assignment.

*Standard of Review*

The standard of review is discussed in *Kimber v. Sideris*, 8 S.W.3d 672, 675-76 (Tex. App.—Amarillo 1999, no pet.), and we apply it here. We further note that parties often include multiple grounds for summary judgment in their motions. When they do and should the trial court grant the motion without specifying any particular ground upon which it relied, the appellant has the burden of illustrating why none of the grounds support the ruling. *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied). Should he not do that, then he failed to prove error. *Id.*

*Background*

The dispute arises from the application of Roundup herbicide to white corn planted by 2L Farms. The decision to apply the herbicide was made by an employee of Crop Quest, Kirk Aljoe. Crop Quest had been retained by 2L Farms to provide services, such as advice, reporting, and recommendations, to 2L Farms regarding 2L Farms' farming efforts during the 2010 calendar year. One aspect of the agreement encompassed the type of herbicide to apply to the crops growing in an area called Pivot 29. It historically had been planted with yellow corn, a fact about which Crop Quest knew. However, 2L Farms decided to sow the field with white corn. While the former type of corn was Roundup tolerant, the latter was not. And, when it came time to select which herbicide to apply, that selected by Aljoe contained traces of Roundup.[2] The herbicide adversely affected the crop's growth which then affected crop yield.

---

[2] Allegedly, Aljoe thought that yellow, not white, corn had been sown in the field. Though his selection of herbicide would have been safe for either yellow or white corn, the product was mixed with a small amount of Roundup that remained in the applicator tanks from previous use. Aljoe was informed of the situation but nonetheless approved its application because of yellow corn's purported resistance to the herbicide.

The Loudders and 2L Farms sued Crop Quest. As acknowledged by Brandon Loudder during his deposition, "the gist of . . . [their] claim is that somehow or another Mr. Aljoe should have known that . . . [they] . . . planted white corn in pivot 29 and known that it wasn't Roundup Ready[.]" Aljoe denied knowing and being told that the crop had been changed from yellow to white corn. Brandon Loudder, however, attested via deposition both that he had and had not told Aljoe or Crop Quest of the change before application of the herbicide.

*Deceptive Trade Practice Claims—Representations*

2L Farms and the Loudders averred various claims against Crop Quest founded on the Deceptive Trade Practices Act, that is, Texas Business and Commerce Code §§ 17.41 *et seq.* (West 2011). They contended that Crop Quest violated § 17.46(b) of the Act because it 1) represented that goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they did not have or that a person had a sponsorship, approval, status, affiliation, or connection which he does not; 2) represented that an agreement confers or involves rights, remedies, or obligations which it did not have or involve, or which are prohibited by law; 3) represented that a guarantee or warranty conferred or involved rights or remedies which it did not have or involve; and 4) failed to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. They also sued for breached warranties. As previously mentioned, Crop Quest sought to defeat these claims via a "no evidence" motion for summary judgment. Via that motion, it questioned the existence of evidence illustrating each element underlying the allegation. Furthermore, the trial court mentioned no

3

particular ground upon which it acted when granting the motion. Now we are told the trial court erred. We overrule the issue.

Two summary judgment grounds uttered by Crop Quest are of note here. The first concerns the nonexistence of evidence illustrating that the Loudders were "consumers" and the second involves the nonexistence of evidence indicating that the purported representations underlying the deceptive trade practice claims were made prior to or contemporaneous with the execution of the service contract.

Regarding the former, Crop Quest alleged that "[t]he November 2, 2009 Service Contract, which forms the basis of Plaintiffs' DTPA claims, was between Defendant and Plaintiff 2L Farms. There is thus no evidence that Plaintiffs Brandon Lance Louder and Terri Louder were 'consumers' under the DTPA." In other words, the "consumer" was 2L Farms since the contract was with that entity, not with the Louders individually. We cannot but interpret this as Crop Quest's effort to invoke the entity theory of partnerships recognized in Texas. *See In re Allcat Claims Serv., L.L.P.*, 356 S.W.3d 455, 463-64 (Tex. 2011) (stating that (1) "Texas adheres to the entity theory," (2) the legislature "'unequivocally embrace[d] the entity theory of partnership by specifically stating . . . that a partnership is an entity distinct from its partners'" in Texas Revised Civil Statutes Ann. art. 6132b-2.01, and (3) the Texas Business Organizations Code "plainly provides that '[a] partnership is an entity distinct from its partners'"). And, given that argument, it was encumbent upon the Loudders to address whether being partners in the 2L Farms partnership qualified them as consumers under the Deceptive Trade Practices Act even though they did not sign the contract individually. Neither did, though. Instead, they simply argued that because the definition of "consumer" includes "individuals" and they were individuals, they therefore were consumers. That is also the

4

same argument raised before us. They again did not address whether members of a partnership qualified as consumers *vis-a-vis* a transaction when the transaction is between the partnership (not the members of the partnership) and a third party. Because they did not, they failed to illustrate that the trial court could not have granted summary judgment against the Loudders on their deceptive trade practice claims.[3]

As for the matter about representations being made prior to execution of the contract for services, the complaints of 2L Farms pertain to the failure of Crop Quest to perform as it promised in its contract. For instance, it argued that 1) "the November 2, 2009 agreement made specific representations that Crop Quest would assist 2L Farms with decisions involving agronomic recommendations that could enhance the yield and efficiency of 2L Farms' crop production," 2) "the agreement made a specific representation that a representative of Crop Quest would maintain personal and written contact with 2L Farms for the purpose of exchanging information regarding crop production," and 3) "the agreement made specific representations that Crop Quest would maintain records of the production practices and activities for the benefit of 2L Farms." Each, actually, was a term of the contract or a promise contained in the contract, and, according to 2L Farms, they were purportedly false or misleading because Crop Quest allegedly failed to perform them. Additionally, we were not cited to anything of record indicating that Crop Quest made any prior or contemporaneous representations pertaining to those contractual obligations. *See Ken Petroleum Corp. v. Questor Drilling, Corp.*, 24 S.W.3d 344, 357 (Tex. 2000) (rejecting the argument that because the contractual indemnity agreement was void, there arose a deceptive trade practice since there was no evidence that Questor made representations about the

---

[3] Crop Quest raised like arguments against other causes of action asserted by 2L Farms and the Loudders. Furthermore, the argument went unaddressed in each instance.

indemnity obligation). Again, the complainant simply cites to the obligations themselves and posits that because they were purportedly breached, the obligations constituted false or misleading representations. This is problematic because simply breaching a contract does not alone give rise to a false, misleading, or deceptive act. *Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998); *Continental Dredging, Inc. v. De-Kaizered, Inc.,* 120 S.W.3d 380, 389-90 (Tex. App.—Texarkana 2003, pet. denied). And, because the purported representations here were merely the promises constituting the contract, the failure to perform them did not convert them to misleading, deceitful, or deceptive misrepresentations for purposes of a deceptive trade practice claim. *Continental Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d at 389-90 (stating that there was no evidence to support the DTPA claim because the representation simply concerned the failure to dredge the area to the depth required by the contract).

We do note that 2L Farms also averred that Crop Quest failed to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. The pertinent transaction is the November 2009 contract whereby Crop Quest agreed to advise 2L Farms. Yet, to reiterate, the crux of 2L Farms' complaint involved the misapplication of Roundup, the supposed failure to disclose the intent to apply Roundup, and the failure to maintain records and communicate with 2L Farms about the application. None of that occurred before the execution of the November agreement. Thus, they could not have induced 2L Farms into entering the transaction.

*Deceptive Trade Practice—Breach of Warranty*

Next, 2L Farms averred that "the following warranties were breached and therefore actionable under Section 17.50(a)(2) of the Texas Business and Commerce Code: a) the implied warranty of fitness for a particular purpose; b) the implied warranty of good and workmanlike performance; [and] c) [the] [e]xpress warranties and representations made in the Service Agreement between Plaintiffs and Defendant dated November 2, 2009."[4] Via its motion for summary judgment, Crop Quest asserted, among other things, that there was no evidence of 1) the existence of a warranty, either expressed or implied, 2) reliance by 2L Farms, 3) breach, and 4) causation. The motion was granted, again without specification of any particular ground upon which the trial court relied. According to 2L Farms, the decision was wrong because the complainant presented some evidence creating a question of fact on each element attacked. We overrule the issue.

*Express Warranty*

The express warranty is best described by 2L Farms in its appellant's brief. According to that document, it consists of the statement in "[t]he Service Agreement" between it and Crop Quest stating that "'Crop Quest will assist the producer with the decisions involving crop selection and other agronomic recommendations that can enhance the yield and efficiency of crop production . . . .'" The passage purportedly "is a clear representation concerning the quality or characteristics of the services," and, therefore, is an express warranty.

A warranty describes the "character, quality, or title" of that which is being sold and "by which seller promises or undertakes to insure that certain facts are or shall be

---

[4] *Plantiffs' Second Amended Petition.*

as he then represents them." *Chilton Ins. Co. v. Pate & Pate Enters.,* 930 S.W.2d 877, 890-91 (Tex. App.—San Antonio 1996), (*quoting* BLACK'S LAW DICTIONARY 1586 (6th ed. 1990)).  Furthermore, there must be a "definitive" affirmation of fact or promise for the warranty to be expressed.  *Id.*  Necessarily then, an express warranty relating to services is a definitive affirmation of fact or promise relating to the character or quality of the services.  *See Paragon General Contractors, Inc., v. Larco Constr., Inc.,* 227 S.W.3d 876, 886 (Tex. App.—Dallas 2007, no pet.) (stating that a cause of action for breached warranty for services includes, among other things, a representation by the defendant to the plaintiff "about the characteristics of the services by affirmation of fact, by promise, or by description").  And, one assesses whether a breach of that warranty occurred by determining whether the services received conformed to the character and quality of those promised.  *Chilton Ins. Co. v. Pate & Pate Enters.,* 930 S.W.2d at 891.

At this point, we refer the reader back to 2L Farms' description of the express warranty at bar.  Again, it consisted of the contractual obligation that "Crop Quest will assist the producer with the decisions involving crop selection and other agronomic recommendations that can enhance the yield and efficiency of crop production . . . ."  Though the complainant characterizes that as "a clear representation concerning the quality or characteristics of the services" involved, it failed to explain how that was so.  Indeed, it merely concluded as much.

Our interpretation of the entire contract leads us to construe the passage simply as describing what Crop Quest agreed to do; that is, provide farming advice for the purpose of enhancing crop yield.  More importantly, nothing within it specifies any particular result or standard against which performance could be measured.  Indeed, the contract specified that "Crop Quest cannot guarantee yields or results from its

recommendations due to its inability to control the quality of products used, or the application of such products." Having effectively disclaimed any guarantee regarding yield and results, Crop Quest's reference to assisting the producer in enhancing yields is not a *definitive* affirmation or promise relating to character, quality, or attributes of the services to be provided. It must be remembered that the meaning of words and passages in a contract are interpreted by considering them within the context of the whole document. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). 2L Farms' effort to focus only on a contract passage alluding to the desire to enhance crop yield fails to abide by that rule.

*Implied Warranties*

Next, 2L Farms asserts that "[t]here is evidence that [Crop Quest] breached (i) the implied warranty of fitness for a particular purpose, and (ii) the implied warranty of good and workmanlike performance." Thus the trial court purportedly erred in granting summary judgment on those claims. We overrule the issue.

2L Farms included neither argument nor authority in its appellant's brief regarding the contention that Crop Quest violated the implied warranty of good and workmanlike performance. Thus, the argument was and is waived. *Harris v. Archer*, 134 S.W.3d 411, 447 (Tex. App.—Amarillo 2004, pet. denied) (holding that the failure to cite authority or provide argument supporting an issue is inadequate briefing resulting in the waiver of that issue).

As for the argument about breaching an implied warranty regarding the fitness of goods purchased, Crop Quest sought to defeat this claim below by asserting, among other things, that 1) our Supreme Court "has . . . held that an implied warranty of fitness for a particular purpose does not apply to a product provided as an inseparable part of

9

the rendition of professional services. *See Walden v. Jeffrey,* 907 S.W.2d 446,448 (Tex. 1995)" and 2) "there is no evidence that the Service Contract was exclusively for the sale of goods (which were not an inseparable part of the rendition of professional services)." In other words, Crop Quest argued that there could be no such implied warranty here because 2L Farms bought services, and the herbicide applied to Pivot 29 was an indivisible aspect of providing those services. Given that the trial court did not indicate it granted summary judgment on grounds other than this, 2L Farms had the burden to show us why this ground could not support the trial court's decision. Yet, 2L Farms did not do that. Instead, it noted the rather specific argument in its brief but then said nothing about it. Simply put, the burden of showing error was not carried.

*Breach of Contract*

Next, 2L Farms contended that the record held some evidence to illustrate that Crop Quest breached the service contract. We overrule the issue.

When attempting in its appellant's brief to illustrate evidence of an actual breach of the contract, 2L Farms merely stated: "As shown by all foregoing references to the agreement and actions and inactions of Appellee as set forth herein in discussion of the breach of warranties. [sic] Appellee breached the contract." Yet, as we discussed above, 2L Farms did not establish that the trial court erred in granting summary judgment upon the claims of breached warranty. So, since its claim of breached contract appeared to be based upon the viability of its claims of breached warranties and the latter were not shown to be viable, we cannot say that 2L Farms illustrated that

the trial court erred in entering summary judgment upon the claim of breached contract.[5]

We further note that in moving for summary judgment on the breach of contract claim, Crop Quest argued the following:

> Texas courts generally do not allow what are truly negligence claims to be fractured into claims for breach of contract. [citation omitted] Once a professional and client have established a relationship, [']the real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise.' [ ] Although more frequently cited in legal malpractice cases, improper fracturing has also been cited as a basis for limiting claims against other professionals. [citation omitted] (accounting firm could only be sued for negligence).

It then concluded by stating: "Just as any DTPA or fraud claim arising after the execution of the November 2, 2009 Service Contract is improper, so is any claim alleging breach of the contract." This ground for entering summary judgment went unaddressed by 2L Farms in its appellant's brief. Given the nature of the summary judgment order and the trial court's decision not to specify the particular grounds underlying its decision, this omission by 2L Farms is another reason for us to conclude that it did not carry its burden to prove the decision was wrong.

*Fraud Claim*

Next, 2L Farms alleged that the record contained some evidence establishing each element of fraudulent misrepresentation and fraudulent inducement. We overrule the issue.

2L Farms stated that "[t]he contract attached to this brief as Exhibit A-3 clearly shows that Appellee made representations of the services to be provided by Appellee and the nature and quality of those services." It then said that "[f]or each of the reasons

---

[5] To the extent that 2L Farms may purport to base its claim for breached contract on something other than its warranty theory, it was obligated to explain as much to us in its brief. Adequate briefing requires the provision of argument and authority, not simply conclusions unaccompanied by legal authority. *Cooper v. Cochran*, 288 S.W.3d 522, 530-31 (Tex. App.—Dallas 2009, pet. denied).

set above, it is clear that the representations made by Crop Quest were false. Records and contact were not maintained consistent with providing services to enhance Appellants' crop yields." Yet, we were cited to (and our own search uncovered) no evidence from which one could infer that the representations alluded to were false when made or that Crop Quest lacked knowledge of their truthfulness when made. Such is a requirement of fraudulent inducement and misrepresentation. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (stating that a "fraud cause of action requires: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (4) which was relied upon, and (5) which caused injury"). So, we cannot say that the trial court erred in rejecting the allegations of fraud based upon what was said in the contract.

To the extent that 2L Farms based its claim of fraud upon "specific representations as to the type and nature of the herbicide which was to be applied to the Pivot 29 corn" contained in "Crop Quest Field Reports attached as Exhibits 3, 4, 7, 8, and 9 to Appellants' response to the first motion for summary judgment," it again fell short. The representations to which it alluded were actually "Herbicide Recommendation[s]." To the extent that a "recommendation" can be false, it nonetheless would have to be false when uttered. Again, we were neither cited to nor did we find evidence it was false when made or made without knowledge of its accuracy. The failure to perform a contractual obligation alone is not evidence of fraud. *Southern Union Co. v. City of Edinburg*, 129 S.W.3d 74, 92-93 (Tex. 2003). And, 2L Farms simply attempts to convert purported deficiencies in Crop Quest's performance of contractual duties into fraud. It cannot do that on the record at bar.

*Professional Malpractice*

Crop Quest also moved, via a separate motion, for summary judgment on 2L Farms' allegation of negligence. It contended that there was no expert evidence of the pertinent standard of care, its breach, or causation between the purported breach of the standard and 2L Farms' alleged damages. 2L Farms did and does not question that the circumstances of this case mandated the use of expert testimony to establish each of those elements. Instead, it contended that Aljoe's own testimony provided the requisite evidence. We overrule the issue for several reasons.

First, we are cited to no evidence indicating that Aljoe is an expert within the industry of agronomics or farming and the provision of agronomic or farming services. If expert testimony is needed, as all seem to acknowledge, then Aljoe must be shown to be an expert before his deposition excerpts can be used to fill the void.[6]

Second, the Aljoe deposition excerpts to which 2L Farms alludes indicate that he "checked the fields," the "herbicides listed on Field Reports did not contain Roundup," his "inspection indicated the sprayed corn was dead," he "would not have recommended spraying Roundup on Pivot 29 if he had known it was white corn," and he "had knowledge that Roundup was sprayed on Pivot 29." Yet, we are not cited to any evidence indicating the identity of the field or profession involved; whether it is general farming, agronomy, herbicides, or the application of herbicides or whatever else goes unmentioned. Nor are we cited to evidence specifying or explaining the applicable standard of care related to any of those endeavors, much less how it was breached.

Simply put, Aljoe's description of what happened and what he *personally* would have done had circumstances been different is not alone expert testimony regarding the

_____

[6] Indeed, Crop Quest argued that no one designated Aljoe as an expert, that the deadline to designate experts had expired, and, therefore, his words could not be used as expert testimony.

standard of care mandated by the profession involved. *See Warner v. Hurt*, 834 S.W.2d 404, 407 (Tex. App.—Houston [14th Dist.] 1992, no writ) (stating what a purported expert would have done personally is not evidence of the standard of care or its breach). Given this, we cannot say that 2L Farms established that the trial court erred in concluding that no evidence supported the claim of negligence.

Accordingly, we affirm the summary judgments.


Brian Quinn
Chief Justice